LAW OFFICE OF COURTNEY M. COATES,
*A Professional Law Corporation*
COURTNEY M. COATES, ESQ. (Bar No. 203448)
43537 Ridge Park Dr., Ste. 100
Temecula, CA 92590
Telephone: (951) 595-8118
Facsimile: (951) 296-2186
ccoateslaw@gmail.com

Attorneys for Plaintiffs PREDESTINED
ENTERTAINMENT, LLC and TAMERA HILDEBRAND-
McDOWELL

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PREDESTINED ENTERTAINMENT, LLC, a California limited liability company, and TAMERA HILDEBRAND-McDOWELL<br><br>Plaintiffs,<br><br>v.<br><br>WEBBER FILMS, LLC, a California limited liability company; JOSHUA WEBBER, an individual; RIVETING ENTERTAINMENT, LLC, a California limited liability company; GRAVITAS VENTURES, LLC, a Delaware limited liability company; AC JV, LLC dba FATHOM EVENTS, a Delaware limited liability company; and DOES 1 through 10, inclusive<br><br>Defendants. | No. 2:21-cv-00729-FWS-E<br><br>**PLAINTIFFS' MEMORANDUM AND CONTENTIONS OF FACT AND LAW**<br><br>Judge: Hon. Fredrick Slaughter<br>Date:   September 14, 2023<br>Time:  10:00 a.m.<br>Crtrm.: 10D |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................ iii - vi

I.   INTRODUCTION ...................................................................... 1

II.  THE PARTIES CLAIMS AND DEFENSES [L.R. 16-4.1] ..................... 1

   A.  PLAINTIFFS' CLAIMS AND ELEMENTS ....................................... 1

      1.  Summary of Plaintiff's Claims [L.R. 16-4(a), (b)]......................... 1

      2.  Key Evidence in Support of Plaintiffs' Claims [L.R. 16-4.1(c)...... 2

III. SUMMARY OF DEFENDANTS' AFFIRMATIVE DEFENSES
     [L.R. 16-4.1 (D), (E)] .............................................................. 3

      2.  Key Evidence in Support of Plaintiffs' Claims [L.R. 16-4.1(c)...... 2

IV.  ANTICIPATED EVIDENTIARY ISSUES [L.R. 16-4.1(h)] ................. 6

V.   ABANDONMENT OF ISSUES [L.R. 16-4.6] ....................................... 8

# TABLE OF AUTHORITIES

**Cases**

*Cf. Hickman v. Taylor.*
329 U.S. 495, 500 (1947)...............................................................................- 12 -

*Cummings v. Bullock*,
367 F.2d 182 183 (9th Cir. 1966)....................................................................- 5 -

*Effects Assocs., Inc. v. Cohen* ("*Effects II*"),
908 F.2d 555, 557 (9th Cir. 1990)...................................................................- 5 -

*Effects Assocs., Inc. v. Cohen* ("*Effects II*"),
908 F.2d 555, 557 (9th Cir. 1990)...................................................................- 6 -

*Helton v. Factor 5, Inc.,*
26 F. Supp. 3d 913, 921 ...................................................................................- 4 -

*Konigsberg Int'l Inc. v. Rice*,
16 F.3d 355 (9th Cir. 1994); .........................................................- 5 -, - 6 -

*Pfingston v. Ronan Eng'r Co.*
284 F.3d 999,1005 (9th Cir. 2002)................................................................- 12 -

*Renewable Land, LLC v. Rising Tree Wind Farm, LLC,*
No. CV 12-0809 RT, 2013 WL 497628, at *1 (E.D. Cal. Feb. 7, 2013) .................- 5 -

*Simons v. Young*,
93 Cal.App.3d 170 (1979)................................................................................- 5 -

*Southern Union Co. v. Southwest Gas Corp..*
180 F. Supp. 2d 1021 (D. Ariz. 2002)...........................................................- 12 -

*Tyco Thermal Controls LLC v. Redwood Industrials,*
No. C 06-07164 JF (PVT), 2010 WL 1526471, at *11 (N.D.Cal. Apr. 15, 2010) ..........- 4 -

*Ulin v. Lovell's Antique Gallery,*
2010 WL 3768012, at *13 (N.D.Cal.2010).....................................................- 4 -

*Yeti by Mollv Ltd, v. Deckers Outdoor Corp.*
259 F.3d 110, 1106 (9th Cir. 2001)...............................................................- 12 -

*Zhang v. Am. Gem Seafoods. Inc..*
339 F.3d 1020 (9th Cir. 2003)........................................................................- 12 -

**Statutes**
17 U.S.C. § 204(a) ....................................................................- 5 -, - 6 -
17 U.S.C. § 204(a); ..........................................................................- 6 -
17 U.S.C. §§106 and 501 ....................................................................- 1 -

Civil §17.4 .......................................................................................................- 2 -
Fed. R. Civ. P. 37(c)(l) ...................................................................................- 12 -
Fed. R. Civ. P. 37(c)(l) ...................................................................................- 11 -
Fed. R. Civ. P. 8(c).) ........................................................................................- 3 -
Rule 37 sanction.  (*Id.* at 1106 ......................................................................- 12 -

**Treatises**

1 Corbin on Contracts § 264 (1963).) ..............................................................- 5 -

Pursuant to Local Rule 16-4 and the Court's Orders, Plaintiffs Predestined Entertainment, LLC and Tamera Hildebrand-McDowell ("Plaintiffs") submit the following Memorandum of Contentions of Fact and Law, addressing the contentions of the parties to be presented at trial on October 3, 2023.

## I. INTRODUCTION

This is an action for copyright infringement and breach of contract brought by Plaintiffs against Webber Films, LLC, Josh Webber, Riveting Entertainment, LLC, Fathom Events, and Gravitas Ventures, LLC. As described below and will be proven at trial, the Defendants knew or were put on written notice they had no right to release the infringing film without first acquiring Plaintiffs' rights after the option agreement expired pursuant to its terms and without paying the writer, Ms. Hildebrand-McDowell, for the screenplay.[1] As will be proven at trial, one or more of the defendants infringement of the copyright was egregious and willful.

## II. THE PARTIES' CLAIMS AND DEFENSES [L.R. 16-4.1]

This is a civil action concerning copyright infringement of Plaintiff's screenplay, titled I Never Heard My Father Speak. Jurisdiction is asserted under 17 U.S.C. §510 and 28 U.S.C. §1331 and 1388(a).

### A. PLAINTIFFS' CLAIMS AND ELEMENTS

#### 1. Summary of Plaintiffs' Claims [L.R. 16-4(a), (b)]

Plaintiffs will pursue copyright infringement (direct or contributory) and breach of contract. Plaintiff Hildebrand-McDowell seeks statutory damages arising from the infringement. Plaintiff Predestined Entertainment, LLC seeks damages based on Webber Films, LLC's breach of the option contract.

Summary: Plaintiff McDowell alleges violations of 17 U.S.C. §§106 and 501 due to the Defendants unauthorized reproduction, distribution, and public performance of a film embodying Plaintiff's copyrighted screenplay. Specifically, Defendants released the

---

[1] This memorandum, while based on diligent inquiry and investigation by Plaintiffs, necessarily reflects only the current state of Plaintiffs' knowledge, understanding, and belief based upon the information made available to Plaintiffs. Plaintiffs reserve the right to modify, supplement, revise or amend this Memorandum and to correct any inadvertent errors or omissions that may be contained herein. Furthermore, this Memorandum is provided without prejudice to Plaintiffs' right to amend as a result of mistake, error, or oversight, and without prejudice to using, or relying on, at trial, hearing, or otherwise, testimony omitted from this response as a result of mistake, error or oversight.

film in hundreds of theatres across the United States, and through digital streaming platforms and copying, distributing, and selling DVDs.

Elements:  Plaintiff has the burden of proving: (1) McDowell is the owner of a valid copyright; and (2) Defendants copied original elements from the copyrighted work.

Source:  Ninth Circuit Manual of Model Jury Instructions:  Civil §17.4.

Elements:  For contributory infringement, Plaintiff must prove:  (1) the defendant knew or had reason to know of the infringing activity of a direct infringer; and (2) the defendant intentionally induced or materially contributed to the direct infringing activity.   Ninth Circuit of Model Jury Instructions:  Civil 17.21

Key Evidence:

Webber Defendants delivered a forged Script Rights Transfer Agreement to distributors and did not exercise its option to purchase script rights from Plaintiff.  Plaintiffs demanded payment prior to the release of the film and Defendants made repeated promises to pay her.  There was no written transfer of copyright or license given to distribute the film without  first payment of the purchase price.  Plaintiff sent cease and desist letters before the film's release, which defendants ignored.

**Claim 2:  Breach of Contract**

Summary:  After the option agreement expired, Webber Films, LLC entered into exclusive distribution agreements with third-party distributors without paying Plaintiff the agreed-upon purchase price.  These distributors have released the film throughout the world.

Elements:  To recover damages from Webber Films, LLC for breach of contract, Predestined Entertainment, LLC must prove all of the following:  (1) Predestined Entertainment and Webber Films, LLC entered into a contract; (2) Predestined Entertainment, LLC did all, or substantially all, of the significant things that the contract required it to do; (3) Webber Films, LLC was required to pay Predestined Entertainment, LLC the contract price in order to acquire the copyright in *I Never Heard My Father Speak;* (4) Webber Films, LLC breached the contract; (5) Predestined Entertainment, LLC was harmed; Webber Films, LLC's breach was a substantial factor in causing Predestined Entertainment, LLC's harm.

Source:  CACI Jury Inst. 303

**Prayer for Relief - Contract Damages**

Summary:  Plaintiff Predestined Entertainment, LLC will seek damages arising from the contract, including the agreed-upon purchase price of 6% of the direct cost budget for the film, together with the unpaid option fees.  Webber Films has provided evidence the production budget was, at least, $311,000.

## 2. Key Evidence in Support of Plaintiffs' Claims [L.R. 16-4.1(c)]

**Claim 1:  Copyright Infringement.**  Plaintiff McDowell has requested the parties stipulate to a series of undisputed facts that could narrow the factual issues in dispute for purposes of trial.  If not so stipulated, Plaintiff will introduce the following categories of evidence establishing that Webber Defendants willfully reproduced, performed, and distributed Plaintiff's copyrighted screenplay embodied in the film.

(a) Evidence of the copyrighted screenplay, movie script, non-disclosure agreement, and option agreement showing the film is derivative of Plaintiff's original screenplay.

(b) Evidence of the creative elements of the screenplay and film, including characters, setting, themes, plot, setting.

(c) Evidence of the distribution agreements to distribute the film based on the screenplay and intent to reproduce and widely distribute the film throughout the world.

(d) Evidence of forged document Webber used to clear the film for distribution.

(e)  Evidence of Plaintiff's demands for payment prior to the film's release and Webber Defendants' promises to pay her, including testimony from Plaintiffs.

(f) Evidence of willful infringement or, alternatively, non-willful infringement by defendants, including forged Script Rights Transfer Agreement and expert witness testimony, together with the defendants' widespread distribution and copying after being notified of the infringement.

(g) Evidence of the defendants' course of dealing and business acumen in securing film clearances and scope of Defendants' use and exploitation of the infringing work via theatres, internet, and digital streaming platforms.

1

2

### III.  SUMMARY OF DEFENDANTS' AFFIRMATIVE DEFENSES
### [L.R. 16-4.1(D), (E)]

3

4

Plaintiffs hereby object to any unpleaded affirmative defenses not raised in the Defendants' answer to Second Amended Complaint.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

To the extent Defendants attempt to assert unpleaded affirmative defenses, the general rule is that a defendant should assert affirmative defenses in its first responsive pleading. (Fed. R. Civ. P. 8(c).)  A defendant "may raise an affirmative defense for the first time . . . only if the delay does not prejudice the plaintiff." *Magana,* 107 F.3d at 1446 (holding that district court erred in granting summary judgment for defendants without determining whether their delay in raising their affirmative defense three months after filing their answer prejudiced the plaintiff); *see also  Helton v. Factor 5, Inc.,* 26 F. Supp. 3d 913, 921(prohibiting individual defendants from asserting affirmative defense raised for the first time two years and nine months after complaint was amended to add the relevant claims; finding that plaintiffs would be prejudiced because they would have no opportunity to conduct discovery on the issue); *Ulin v. Lovell's Antique Gallery,* 2010 WL 3768012, at *13 (N.D.Cal.2010) (prohibiting the defendants from raising FLSA exemption defense at summary judgment; finding that plaintiff would be prejudiced because he could not conduct discovery on the defense); *Tyco Thermal Controls LLC v. Redwood Industrials,* No. C 06-07164 JF (PVT), 2010 WL 1526471, at *11 (N.D.Cal. Apr. 15, 2010) (rejecting plaintiff's attempt to assert innocent landowner defense after three years of litigation during which defendants had no opportunity to conduct discovery on facts that could support or defeat the defense).

22

23

Further, Rule 9 provides:  In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

24

25

**First Affirmative Defense  ("Failure to State a Claim")**

Summary:  Defendants have abandoned this defense.

26

**Second Affirmative Defense ("All Obligations Performed")**

27

28

Summary:  Defendants have abandoned this defense in their Memorandum of Facts and Law.  They had claimed they performed all obligations under the contract.

However, the contract speaks for itself and Plaintiff was never paid for the script as agreed despite repeated promises by Webber Defendants to perform this obligation.

### Third Affirmative Defense ("Breach of Contract")

Summary:  Defendant abandoned this defense claiming Plaintiff breached the option contract by selling DVDs of the stage play.  This is not true - Plaintiff did not sell any DVDs during the option period.  Even if she had, under the option agreement, Plaintiff expressly reserved any and all rights in and to the live stage play.

After Plaintiffs threatened Rule 11 sanctions, Defendants stipulated to withdraw their frivolous counterclaims based on a false allegation that Plaintiff sold DVDS in violation of the option agreement and an unsigned, non-existent distribution agreement with GVN Releasing.

### Fourth Affirmative Defense ("Consent")

(a) Elements

A plaintiff may express consent by words or acts that are reasonably understood by another person as consent.  A plaintiff may also express consent by silence or inaction if a reasonable person would understand that the silence or inaction intended to indicate consent.

However, the Copyright Act has a mandatory writing requirement for transfers of copyright ownership.

Source: CACI 1302; (17 U.S.C. § 204(a); *Konigsberg Int'l Inc. v. Rice*, 16 F.3d 355 (9th Cir. 1994); *Effects Assocs., Inc. v. Cohen* ("*Effects II*"), 908 F.2d 555, 557 (9th Cir. 1990); *Simons v. Young*, (1979) 93 Cal.App.3d 170, 180*; Cummings v. Bullock*, 367 F.2d 182 183 (9th Cir. 1966); *Renewable Land, LLC v. Rising Tree Wind Farm, LLC,* No. CV 12-0809 RT, 2013 WL 497628, at *1 (E.D. Cal. Feb. 7, 2013) (*citing* 1 Corbin on Contracts § 264 (1963).)

(b) Key Evidence:  Knowing there was no oral agreement, Defendant used a forged  signature on a Script Rights Transfer Agreement and delivered this agreement to distributors.  There was no consent given to distribute the film without first getting paid the agreed-upon purchase price for the script.  Plaintiffs made repeated demands for payment prior to the release of the film and objected to the film's release when it was

determined she would not be paid for the acquisition of her script.  Webber made repeated promises to pay her prior to the release of the film to acquire her script.  She caused counsel to send a cease-and-desist letter prior to the film's release.

Plaintiff demanded a written addendum to the option agreement setting forth any proposed new agreement by Webber Film Defendants.   Defendants refused.

**Fifth Affirmative Defense ("Modification of Written Agreement by Oral Agreement")**

(a) <u>Elements:</u>  Whether the parties agreed to modify the alleged option agreement; (2) whether the parties agreed to waive the no-oral-modification clause.

<u>Source</u>:  CACI 313

(b) <u>Key Evidence</u>

Knowing there was no oral agreement, Webber Defendants used a forged signature on a Script Rights Transfer Agreement and delivered this agreement to distributors.  Plaintiff demanded a written addendum to the option agreement setting forth any proposed agreement by Webber Film Defendants.   Defendants refused.

**Sixth Affirmative Defense ("Novation")**

(a) <u>Elements:</u>  Defendants must show the parties substituted a new and different contract for the original. Webber Films must prove Plaintiff agreed, by words or conduct, to cancel the original contract and to substitute a new contract in its place.  CACI 337

The Copyright Act has a mandatory writing requirement for transfers of copyright ownership.  (17 U.S.C. § 204(a).) Defendant used a forged  signature on a Script Rights Transfer Agreement and delivered this agreement to distributors.   The option contract contains an express integration and no-oral-modification clause.

Plaintiff only permitted Defendants to shop the film so that Webber Defendants could purchase the script rights before the film was released.  Webber represented he would do so.  She understood she would get paid for the script prior to the release of the film. Webber Defendants repeatedly pushed the idea of deferred payments after the film's release and she repeatedly refused, resulting in her counsel sending a cease and desist letter prior to the film's release.

Option contracts are to be strictly construed.

Source:  (*Konigsberg Int'l Inc. v. Rice*, 16 F.3d 355 (9th Cir. 1994); *Effects Assocs., Inc. v. Cohen* ("*Effects II*"), 908 F.2d 555, 557 (9th Cir. 1990); *Simons v. Young*, (1979) 93 Cal.App.3d 170, 180*; Cummings v. Bullock*, 367 F.2d 182 183 (9th Cir. 1966); *Renewable Land, LLC v. Rising Tree Wind Farm, LLC,* No. CV 12-0809 RT, 2013 WL 497628, at *1 (E.D. Cal. Feb. 7, 2013) (*citing* 1 Corbin on Contracts § 264 (1963).)

(b). <u>Key Evidence:</u>  Knowing there was no oral agreement, Webber Defendants used a forged signature on a Script Rights Transfer Agreement and delivered this agreement to distributors.  Plaintiff demanded a written addendum to the option agreement setting forth any proposed agreement by Webber Film Defendants.   Defendants refused.

**Seventh Affirmative Defense ("Offset")**

Defendants abandon this defense, claiming Plaintiff breached the option contract by selling DVDs of the stage play.  This is not true - Plaintiff did not sell any DVDs during the option period.  Even if she had, under the option agreement, Plaintiff expressly reserved any and all rights in and to the live stage play.

After Plaintiffs threatened Rule 11 sanctions, Defendants stipulated to withdraw their frivolous counterclaims based on a false allegation that Plaintiff sold DVDS in violation of the option agreement and an unsigned, non-existent distribution agreement with GVN Releasing.

**Eight Affirmative Defense ("Statute of Limitations")**

Section 507(b) of the 1976 Copyright Act provides for a three-year statute of limitations.

On 12(b)(6) motions and summary judgment, Defendants have unsuccessfully argued the statute of limitations bars the copyright claim.   They argue cases where the gravamen of the dispute between joint authors is ownership, not infringement and a co-owner plainly and expressly repudiates the others' claim of ownership.  This does not apply here because Plaintiff's creation of the original screenplay and April 14, 2014 copyright registration are undisputed.

<u>Source:</u>  (Dkt. 82, Order Denying Summary Judgment, 2/6/2023; *Aalmuhammed v. Lee*, 202 F.3d 1227, 1230 (9th Cir. 2000); *Zuill v. Shanahan*, 80 F.3d 1366, 1370 (9th Cir.

1996); 17 U.S.C. § 410; 17 U.S.C. § 507(b); *Welles v. Turner Ent. Co.*, 503 F.3d 728, 734 (9th Cir. 2007)

**Ninth Affirmative Defense ("Unclean Hands")**

Defendant claims Plaintiff breached the option contract by selling DVDs of the stage play.  This is not true - Plaintiff did not sell any DVDs during the option period. Even if she had, under the option agreement, Plaintiff expressly reserved any and all rights in and to the live stage play.

After Plaintiffs threatened Rule 11 sanctions, Defendants stipulated to withdraw their frivolous counterclaims based on a false allegation that Plaintiff sold DVDS in violation of the option agreement and an unsigned, non-existent distribution agreement with GVN Releasing.

**IV.   ANTICIPATED EVIDENTIARY ISSUES [L.R. 16-4.1(h)]**

Plaintiff anticipates the following evidentiary issues:

1.      Expert Testimony of Beth Chrisman, CQDE - Plaintiffs is requesting the Court allow a newly retained expert to testify as to a recently obtained document that is dispositive and a "smoking gun" in the case.  (See Plf's Ex Parte Application, 8/24/2024) On August 22, 2023, during a conference between counsel on pre-trial matters, Gravitas Ventures, LLC disclosed a Script Rights Transfer  Agreement, dated January 6, 2017, signed by Josh Webber.  The document purports to transfer script rights from Plaintiff McDowell to Webber Films, LLC.  According to Gravitas, the Webber Defendants delivered the Script Rights Transfer Agreement to Gravitas to clear the film for distribution.  Gravitas will rely upon the document to show non-willful infringement.

Ms. Chrisman will be asked to render an expert opinion relating to (1) the authenticity of the questioned signature of Tamera Hildebrand-McDowell contained with that certain Script Rights Transfer Agreement, dated January 6, 2017, purporting to transfer a copyright in and to the screenplay, *I Never Heard My Father Speak*; (2) the facts and considerations supporting the basis of her expert opinions.

According to Plaintiffs' expert witness, Beth Chrisman, Certified Questioned Document Examiner, the document was clearly forged.  Plaintiffs must be allowed to

introduce this evidence at trial as it goes to the heart of the case and defendants' longstanding defenses there was an oral or implied transfer of rights and that Webber's infringement was not willful.

2.     Plaintiffs anticipates Defendants will argue they failed to provide a calculation of damages in this case.  This is set forth in the Second Amended Complaint, ¶14 and 15, as well as the parties' Joint Rule 26(f) Report.  Plaintiff McDowell is pursuing statutory damages on the copyright infringement for the one work at issue and need not prove actual damages.  As clearly explained in the complaint and Joint Rule 26(f) Report, Webber Films was required to pay Plaintiffs for acquisition of rights the sum of 6% of the overall production budget (between $300,000 and 500,000) together with payment of $5,000 fee for an option contract extension.

## V.     ABANDONMENT OF ISSUES [L.R. 16-4.6]

In response to a Rule 11 conference between counsel, Webber Defendants have abandoned their counterclaims, on the grounds they were frivolous.  According to their Memorandum of Contentions of Fact and Law, they have abandoned their pleaded defenses of failure to state a claim, all obligations performed, breach of contract, offset, and unclean hands.

Again, as set forth above, Defendants should not be allowed to assert numerous unpleaded affirmative defenses on the eve of trial without Plaintiffs having the opportunity to conduct discovery on such defenses.

DATED:  August 24, 2023

LAW OFFICES OF COURTNEY M. COATES

By:  /s/ *Courtney M. Coates*
COURTNEY M. COATES
Attorneys for Plaintiffs PREDESTINED
ENTERTAINMENT, LLC and TAMERA
HILDEBRAND-McDOWELL

**DECLARATION OF ELECTRONIC SERVICE**

**Central District of California Case No. 2:21-cv-00729-FWS-E**

Service of the document was accomplished pursuant to Central District of California, Order Authorizing Electronic Filing, General Order No. 08-03 and Local Rule 5.3-3, which provide in part: "Upon the electronic filing of a document, a Notice of Electronic Filing (NEF) is automatically generated by the CM/ECF system and sent by e-mail to all attorneys in the case who are registered as CM/ECF Users and have consented to electronic service. Service by this electronic NEF constitutes service pursuant to the Federal Rules of Civil and Criminal Procedure for all attorneys who have consented to electronic service."

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on August 24, 2022, at Temecula, California.

*/s/ Courtney M. Coates*